# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

TAMARA BARRUS, on behalf of herself
and others similarly situated, *et al.*,

                                              Plaintiffs,

                                                              DECISION AND ORDER

                    -vs-
DICK'S SPORTING GOODS, INC.                                   05-CV-6253 CJS
and GALYAN'S TRADING COMPANY,
INC., *et al.*,

                                              Defendants.


## APPEARANCES

For the Plaintiffs:            Patrick Solomon, Esq.
                               Michael Lingle, Esq.
                               Thomas & Solomon LLP
                               693 East Avenue
                               Rochester , NY 14607
                               Telephone: (585) 272-0540

For the Defendants:            Daniel J. Moore, Esq.
                               Harris Beach LLP
                               99 Garnsey Road
                               Pittsford , NY 14534
                               Telephone: (585) 419-8626

                               Matthew W. Lampe, Esq.
                               Jones Day
                               222 E. 41st Street
                               New York, NY 10017-6702
                               Telephone: (212) 326-3939

## INTRODUCTION

**Siragusa, J**. This Fair Labor Standards Act ("FLSA") matter is before the Court on Defendants' motions (Docket Nos. 255 and 293): to deny certification of state law classes; to strike state law class allegations: and to dismiss preempted state common law claims, ERISA claims, and RICO claims. For the reasons set out below, the motions are granted in part and denied in part.

## FACTUAL BACKGROUND

Defendants Dick's Sporting Goods and Galyan's Trading Company, Inc. ("Galyan's") are national sporting goods retailers who merged in 2004 and currently operate under the Dicks Sporting Goods ("DSG") name. DSG operates 255 stores in 34 states with approximately 16,000 employees who are subject to the Fair Labor Standards Act ("FLSA") wage and hour requirements. (*See* Falce Aff. (Docket No. 43) at 1–2.) According to Plaintiffs, DSG and Galyan's implemented formal and informal wage and hour policies which were in direct contravention of the protections afforded employees under the FLSA. Specifically, Plaintiffs have identified three different policies utilized by Defendants which allegedly violate the FLSA. Plaintiffs are suing both stores, now merged, along with individual defendants, alleging violations of the FLSA, state law and the Employee Retirement Income Security Act ("ERISA") and the Racketeer Influenced Corrupt Organization Act ("RICO").

In the subject application, as indicated above, Defendants seek dismissal of the state common law overtime claims arguing that they are preempted by FLSA, denial of class certification of all the state law claims, dismissal of the ERISA claims and dismissal of the RICO claims.

## STANDARDS OF LAW

### Motion to Dismiss Standard

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co.*

*Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 129 S. Ct. at 1949–50.

### Class Action Certification Standard

Plaintiffs allege that they have sufficiently plead a class action maintainable under Federal Rule of Civil Procedure 23(b)(1), (2), and (3). Rule 23(a) and the relevant (b) subsections state:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of

> (A) inconsistent or varying adjudications with respect to

individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a), (b)(1)(A), (b)(1)(B), (b)(2) and (b)(3)(A)–(C) (2009). The party seeking class certification has the burden of demonstrating that Rule 23's requirements are satisfied. *Caridad v. Metro-North Commuter Railroad*, 191 F.3d 283, 291 (2d Cir. 1999) (citation omitted), *cert. denied*, 529 U.S. 1107, 120 S. Ct. 1959, 146 L. Ed. 2d 791 (2000); *see also*, 5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 23.60[2] ("[A] class action must satisfy each of the requirements of Rule 23, and the plaintiff must plead more than a simple reiteration of those requirements in conclusory allegations. Instead, the plaintiff should allege facts demonstrating that all of the requirements for bringing a class

action are fulfilled.") (citation omitted). It is well settled that before certifying a class, a

district court must conduct a "rigorous analysis" to determine whether or not Rule 23's

requirements have been met.[1] *Caridad*, 191 F.3d at 291. However, the court should not

inquire into the merits of the plaintiffs' underlying claims. *Id.* (citation omitted). Moreover,

courts are required to construe Rule 23's requirements liberally. *Eisen v. Carlisle &*

*Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968). Courts should resolve doubts about whether

Rule 23 has been satisfied in favor of certification. *In re Industrial Diamonds Litigation*, 167

F.R.D. 374, 378 (S.D.N.Y. 1996)(citations omitted).

## ANALYSIS

### Introduction

Defendants' memorandum of law in support of their motion (Docket No. 255) states

for an introduction, the following:

> More than four years ago, Barrus filed this case asserting that Defendants
> violated the FLSA and the New York Labor Law by failing to pay employees

---

[1]Neither Rule 23, nor the vast majority of cases interpreting it identifies a particular burden of proof on the plaintiff. *See, e.g., Shepherd v. Babcock & Wilcox of Ohio*, No. C-3-98-391, 2000 U.S. Dist. LEXIS 6349, 2000 WL 987830 at *1 n. 5 (S.D. Ohio, Mar. 3, 2000) ("Although many…reported decisions state that the party seeking certification carries this burden, research has found only one reported case which defines that burden, whether as being the preponderance of evidence or otherwise."). According to a leading treatise on the subject of class actions, that is because "[b]urden of proof concepts are generally more applicable to proof of facts or evidence and do not comfortably fit in determinations respecting whether a particular procedural device has been properly invoked or should be permitted to be maintained." 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 7.17 (3d ed. 1992). The Newberg treatise further indicates that the plaintiff's burden under Rule 23 is merely a burden to plead facts indicating that Rule 23 is satisfied, which then creates a rebuttable presumption in favor of class certification. *Id.* at §§ 7.19-7.20. If the defendant rebuts this presumption by producing contrary evidence, the burden of production then shifts back to the plaintiff to produce counter-affidavits or other evidence. *Id.* § 7.26 The Court must then exercise its discretion to determine whether class certification is appropriate. *Id.* § 7.27.

for all hours worked. Barrus ultimately moved for conditional certification of an FLSA nationwide class. Applying the FLSA's lenient standard for conditional certification, this Court granted her motion and authorized Barrus to mail notice to more than 125,000 current and former DSG and Galyan's employees. She did so, but a mere 3,573 individuals, or just 2.8%, chose to opt in to the FLSA collective action. That is, more than 97% of putative class members decided not to join. Undeterred by this lack of response, Barrus and her fellow named Plaintiffs still seek to represent the approximately 121,500 putative class members who chose not to join this case. To do so, Barrus amended her complaint to add claims under the statutes of thirty-two states for "unpaid wages" as well as claims under the statutes of twenty-four states for "unpaid overtime." She also added ten separate common law claims for unpaid wages under the laws of thirty-six states. These common law claims include theories such as breach of contract, *quantum meruit*, unjust enrichment, fraud, and conversion. By adding these state law claims, which are subject to the "opt-out" procedure of Rule 23 as opposed to the "opt-in" procedure of the FLSA, Plaintiffs attempt to pull back into the case the people who chose not to join. But Plaintiffs cannot possibly show, as they must, that this panoply of state law claims is properly maintainable as a class action under Rule 23. The state statutes and common laws under that Plaintiffs invoke differ from one another in numerous material respects. Application of these varying standards in a single case, and the need to resolve disputes as to the correct state law interpretation of many of these standards, would inject intractable case management problems into the case and guarantee that no common issue would predominate. In addition, Plaintiffs' proposed class definition is defective because it is not based upon objective criteria and, instead, would require the Court to make a merits determination for each potential class member just to determine class membership. Because it is clear on the face of the Second Amended Complaint that Plaintiffs will be unable to satisfy FRCP 23, this Court should deny certification and strike Plaintiffs' state law class allegations.

Furthermore, certain of Plaintiffs' substantive claims legally fail and should be dismissed. First, Plaintiffs' common law claims are preempted by the FLSA to the extent they seek to recover overtime pay. *Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 CJS, 2008 WL 203028, at *5, 7 (W.D.N.Y. Jan. 23, 2008).

Second, Plaintiffs' ERISA claims, that Defendants breached their fiduciary duty and committed recordkeeping violations by failing to credit Plaintiffs' 401(k) plans for all time worked, legally fail. The law is clear that neither DSG nor Galyan's was acting as a fiduciary when making the business decision to compensate their employees. Plaintiffs' recordkeeping claim also legally fails because it is simply a thinly-disguised claim for ERISA benefits, which cannot be brought under ERISA's 'catch all' equitable relief provision that Plaintiffs invoke.

Finally, Plaintiffs' RICO claim should be dismissed. "Alleged civil violations of the FLSA do not amount to racketeering." Vandermark v. City of N.Y., 615 F. Supp. 2d 196, 209-210 (S.D.N.Y. 2009). And Plaintiffs have not, and cannot, sufficiently plead the mandatory elements of RICO.

(Def.s' Mem. of Law (Docket No. 256) at 1–2.) Plaintiffs oppose Defendants' motion stating:

On a pre-discovery motion to deny certification and/or strike the class allegations, the defendants bear the burden of demonstrating that on the face of the complaint, class certification is impossible. Thus, individual defendants Edward Stack, Kathryn Sutter, William Colombo, Jay Cross and Lynn Uram (collectively, "defendants") must demonstrate not only that the various states' laws differ in material respects, but also that those differences, if any, unavoidably prevent class certification. The individual defendants, as did the corporate defendants Dick's Sporting Goods, Inc. and Galyan's Trading Company, Inc., have utterly failed to show that this action can never, under any circumstances, be certified as a multistate class action pursuant to Rule 23 and it is thus premature to deny class certification and/or strike the class allegations. For example, defendants have not even attempted to demonstrate how the alleged material differences could not be handled in subclasses or some other procedure available to the Court or that the alleged differences cannot be avoided altogether through the application of one state's law to this entire action. The remaining relief requested by defendants is similarly unfounded and should also be denied. Indeed, it is well settled that the FLSA does not expressly preempt any duplicative state law remedies and that Congress did not intend the FLSA to be the exclusive remedy for wage and hour violations, i.e., that there is no field preemption. Therefore, inasmuch as defendants have not even alleged much less demonstrated that the only remaining category of preemption, obstacle preemption, applies, it is clear that plaintiffs' common law claims are not preempted by the FLSA. In addition, plaintiffs have properly pleaded their ERISA and RICO causes of action. Defendants have failed to demonstrate how RICO has been preempted by the FLSA, since no such intent has been voiced by Congress. Further, defendant's contentions that ERISA breach of fiduciary and maintenance of records claims should be denied as to the individual defendants are similarly unfounded.

(Pl.s' Mem. of Law (Docket No. 333), at 2–3.)

***Class Certification of State Law Claims***

Defendants contend that, "Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement or Rule 23(b)(3)'s predominance or superiority requirements because Plaintiffs' state law claims would break down into innumerable state-specific issues that could not be tried commonly across the class and that would create incurable case management problems." (Def.s' Mem. of Law (Docket No. 256) at 4–5.) The Court agrees.

First, the second amended complaint alleges that the claims,

> arising under the ERISA, RICO and statutory and common laws of Alabama, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Iowa, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, Nevada, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

(2d Am. Compl. ¶ 5.) The laws of those states are easily found, as demonstrated by the arguments in the memoranda in support of, and in opposition to, the motions. The Court does not believe that discovery would yield any more relevant information on the issue of class certification of the state law claims. Plaintiffs' reliance on *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21–22 (2d Cir. 2003), for the proposition that a hearing is required in this case prior to any certification determination under Rule 23, is misplaced. *Parker* simply applied the rule announced in *Robinson v. Metro-North Commutor R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), in which the Second Circuit held that,

> when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must "consider[ ] the evidence presented at a class certification hearing and the arguments of counsel," and then assess whether (b)(2) certification is appropriate in light of "the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Hoffman*, 191 F.R.D. at 536.

*Robinson*, 267 F.3d at 164. Here, in contrast, the issue is not so much the remedy sought, but whether a class action can be maintained for causes of action that span the 36 state laws that are invoked by the second amended complaint. In that regard, the Court determines that no certification hearing is necessary to gather additional factual information.

Next, the Court determines that Plaintiffs cannot meet Rule 23(a)'s commonality requirement that "there are questions of law or fact common to the class." As Judge Telesca pointed out in *Luciano v. Eastman Kodak Co.*, 05-CV-6463T, 2006 WL 1455477, *1 (W.D.N.Y. May 25, 2006):

> The state wage and contract claims lack commonality because they are being brought under 34 separate wage laws, each with its own peculiar requirements and defenses. Similarly, the breach of contract claims are being brought pursuant to the laws of 48 jurisdictions. Because adjudication of these claims would require the interpretation and application of several different laws of several different states and territories, I find that plaintiff has failed to establish that the state wage and contract claims of the purported class are common amongst the class. *See Kaczmarek v. IBM*, 186 F.R.D. 307, 312-313 (S.D.N.Y.1999) ("The prospect of determining the law of all fifty states and then applying the materially different laws that exist...would make this class action too complicated and unmanageable.")

*Luciano*, 2006 WL 1455477, *3. Though the number of jurisdictions here is less, the same issues regarding commonality exist. Though Plaintiffs characterize the common issue as whether employees worked hours for which they were not paid, their own chart shows that under state law, working off-the-clock does not always automatically create liability on the part of the employer.

Under the FLSA, Plaintiffs would be required to show that Defendants had actual or constructive notice of the employee's off-the-clock work. *Davis v. Food Lion*, 792 F.2d

1274, 1277 (4th Cir. 1998) ("The Act requires the plaintiff to prove that he was 'employed' by the defendant, and that means proof that the defendant knew or should have known that the plaintiff was working overtime for the employer."). As Defendants argue, in Maryland, the state statute requires proof that, "an [employee] is required by the employer to be on the employer's premises, on duty, or at a prescribed workplace." (Pl.s' Mem. of Law, Ex. A.) In Colorado, the definition of "hours worked" includes "all the time the employee is suffered or permitted to work whether or not required to do so." (*Id.*) Colorado defines an employee as, "any person performing labor or services for the benefit of an employer in which the employer may command when, where, and how much labor or services shall be performed." 7 Colo. Code Regs. § 1103-1:2 (Jan. 1, 2010).

Other state courts have held that wage laws do not provide a right to an individual lawsuit for straight-time claims. In Missouri, for example, "[s]ections 290.500 to 290.530 only require payment of minimum wage and overtime, and therefore Hudson's contention that she is entitled to straight time is not meritorious. Her straight time claim must be made on a breach of contract theory." *Hudson v. Butterball, LLC*, No. 08-5071-CV-SW-RED, 2009 WL 3486780, *5 (W.D.Mo. Oct. 14, 2009). In Kansas, there is no statutory overtime requirement, and, therefore, Plaintiffs would have to prove that the employee and employer had a mutual intent to contract. "The question of whether an implied contract exists under Kansas law is typically a question of fact for the jury." *Weatherby v. Burlington Northern and Santa Fe Ry. Co.*, 209 F. Supp. 2d 1155, 1164 (D. Kan. 2002). The Court would face a daunting task if it tried to fashion a jury instruction that took into account the variances in the state laws under which Plaintiffs make their common law and state statutory claims.

Plaintiffs, however, contend that the Court can apply *one* state standard to *all* the common law claims. (Pl.s' Mem. of Law, at 18.) Plaintiffs cite *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 335 (S.D.N.Y. 2005) in support of their argument, but that case is distinguishable. In *Denney*, the district court wrote, "[b]ecause this is a settlement-only class, the Court need not be concerned with the feasibility of managing the trial of a class action involving many different states' laws." Likewise, Plaintiffs' reliance on *Endo v. Albertine*, 147 F.R.D. 164, 169 (N.D. Ill. 1993) is misplaced. In that case, the district court wrote, in *dictum*, "[u]nder *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-23 (1985), Illinois substantive law may apply to all the state law claims. In any case we will not decide the choice of law issue now." In *Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 821-23 (1985), the Supreme Court wrote, "[g]iven Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id*. at 822. Further, as Justice Brandeis wrote for the Supreme Court,

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts.

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

The Court is not persuaded by Plaintiffs' argument that one state's law could be applied to all the common law claims of all the potential class members. In *Matter of*

*Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995), the Seventh Circuit held that the district court "exceeded the bounds of permissible judicial discretion" because "the district judge proposes to substitute a single trial before a single jury instructed in accordance with no actual law of any jurisdiction—a jury that will receive a kind of Esperanto instruction, merging the negligence standards of the 50 states and the District of Columbia." Here, after observing that the Connecticut standard for hours worked is "'more beneficial to the employee than federal law[,]'" Plaintiffs argue that, "[i]ndeed, in the first instance, a jury need only determine the facts sufficient to establish liability under the federal standard. If those facts are found, then liability will follow under all the states' laws as well." (Pl.s' Mem. of Law, at 10 (quoting *Sarrazin v. Coastal, Inc.*, No. CV-084030702s, 2009 WL 1663177, at *5 (Conn. Super. Ct. May 22, 2009).) However, the Court finds that Plaintiffs' proposal to meld the FLSA into a universally-applicable state common law standard would be an abuse of its discretion and a violation of the *Erie* doctrine.

As to class certification, "[t]he court must also consider 'how a trial on the merits would be conducted' if the class were certified." *Cole v. GMC*, 484 F.3d 717, 724 (5th Cir. La. 2007) (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. La. 1996)). "The party seeking certification has the burden of proof on Rule 23's prerequisites. *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)." *Id.* The Fifth Circuit went on in *Cole* to state:

> We have recognized that in a class action governed by the laws of multiple states, such as this one, "variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741; *accord Georgine v. Amchem Prods.*, 83 F.3d 610, 627 (3d Cir. 1996) (holding that predominance was defeated, in part, by the number of differing state legal standards applicable to the controversy), *aff'd*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The party seeking certification of a

> nationwide class must therefore "provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable obstacles.'" *Spence*, 227 F.3d at 313 (quoting Walsh v. Ford Motor Co., 257 U.S. App. D.C. 85, 807 F.2d 1000, 1017 (D.C. Cir. 1986)). And the district court must then "consider how those variations affect predominance." *Castano*, 84 F.3d at 740. Failure to engage in an analysis of state law variations is grounds for decertification. *See Castano*, 84 F.3d at 741-44 (concluding that court abused its discretion in certifying class where plaintiffs had failed to properly address variations in state law such that conclusion of predominance was based on speculation); *Spence*, 227 F.3d at 316 (concluding that court abused its discretion in certifying class where plaintiffs had failed to carry their burden of providing an extensive analysis of applicable law).

*Cole*, 484 F.3d at 724–25. Plaintiffs have, as the Court previously mentioned, provided a summary chart as part of their motion papers, comparing some aspects of the various state laws in the jurisdictions that are implicated in this lawsuit. They have not, though, provided an extensive analysis, and the Court's brief review, above, of the differences in just a few of the jurisdictions leads it to conclude that certification of the state law causes of action is not feasible.

Plaintiffs also suggest the creation of subclasses. (Pl.'s Mem. of Law (Docket No. 271), at 7, 17.) *See* Fed. R. Civ. P. 23(c)(5) ("Subclasses. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.") If subclasses are created, Plaintiffs do not explain how jury instructions and testimony could be compartmentalized to ensure the jury applies the proper law to the evidence for that subclass. Plaintiffs cite to *Kingsberry v. Chi. Title Ins. Co.*, 258 F.R.D. 668, 669 (W.D. Wash. 2009), in support of their argument. That case involved allegations of systematic overcharges by the defendant of consumers of title insurance in Washington, Oregon, Tennessee and Michigan. The district court determined that:

> The Plaintiff asserts that Washington, Oregon, Tennessee and Michigan have similar filed-rate structures governing the application of title insurance

rates including those for refinance/reissue policies. Plaintiff also alleges that common law claims for breach of contract and unjust enrichment are materially the same throughout the Class States. The Defendant argues that there are substantial differences between the laws of the Class States that make class certification unlikely and should thus preclude pre-certification discovery.

*Id*. at 669 (citations omitted). For obvious reasons, that case is distinguishable, since very few jurisdictions were involved and the plaintiff there established to the district court's satisfaction that the laws governing the claims were substantially similar. In this case, Plaintiffs have not demonstrated that the governing laws in the 36 state jurisdictions involved in this action are substantially similar, or that a common issue predominates.

### Preemption

In its motion, Defendants seek to dismiss Plaintiffs' common law claims to the extent they seek allegedly unpaid overtime: "common law claims for overtime pay are preempted by the FLSA. *See Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 CJS, 2008 WL 203028, at *5, 7 (W.D.N.Y. Jan. 23, 2008)." (Def.s' Mem. of Law (Docket No. 256), at 8.) The Second Circuit has held that, "[e]xpress preemption occurs to the extent that a federal statute expressly directs that state law be ousted to some degree from a certain field." *Association of Int'l Auto. Mfrs. v. Abrams*, 84 F.3d 602, 607 (2d Cir. N.Y. 1996). Since the FLSA does not provide a claim for unpaid straight-time, Plaintiffs argue that the FLSA does not preempt common law claims for straight-time pay. "[A]n employer may contractually agree to compensate employees for time that is not mandatorily compensable under the FLSA." *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. Ala. 1994) (citing *APFU v. Atlanta*, 920 F.2d 800, 806 (11th Cir.1991)).

Plaintiffs urge the Court to reconsider its decision in *Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 CJS, 2008 U.S. Dist. LEXIS 4744 (W.D.N.Y. Jan. 22, 2008), in which the Court reviewed, "whether Plaintiffs' state common-law claims for fraud, breach of contract, breach of implied covenants of good faith, tortious interference with contract, and unjust enrichment are preempted by the FLSA" and held that, "all of the state-law claims pertain to Defendants' alleged failure to pay Plaintiffs in accordance with the FLSA. Consequently, they are preempted by the FLSA and must be dismissed." *Id.* 2008 U.S. Dist. LEXIS 4744, at *19–20. In *Lopez*, the Court determined that the Second Circuit had not decided the issue of preemption, and looked to the Fourth Circuit decision in *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) for guidance. Plaintiffs assert that *Anderson* relied on *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 442 (4th Cir. 1999) and that reliance on *Kendall* in *Anderson* was improper: "The *Kendall* court's decision is a very narrow holding—the FLSA precludes a § 1983 claim, not that the FLSA preempts any and all state common law claims." (Pl.'s Mem. of Law (Docket No. 271), at 24.)

Instead, Plaintiffs urge the Court to follow the Ninth Circuit case of *Williamson v. Gen. Gynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000), arguing it is a better reasoned decision. Plaintiffs contend that the FLSA itself indicates that it was not Congress's intent to preempt the field of wage law, citing to 29 U.S.C. § 218(a), which states, "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter...." Plaintiffs also rely on *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008), in which

the district court wrote: "Given this express statement [29 U.S.C. § 218(a)] of Congress' intent not to displace state laws granting workers higher minimum wages or a shorter maximum workweek, it is clear that the FLSA would preempt only state laws that mandated lower minimum wages or longer maximum workweeks." Plaintiffs argue persuasively that express or field preemption does not apply to the FLSA.

The Court turns next to implied preemption. On that issue, the Second Circuit has written that,

> [e]ven where there is no express statutory statement ousting state law from a given area, there may be implied preemption.
>
>> [A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively,…or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements,…or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.
>
> *Freightliner Corp. v. Myrick*, 131 L. Ed. 2d 385, 115 S. Ct. 1483, 1487 (1995) (internal quotation marks omitted)….

*Association of Int'l Auto. Mfrs. v. Abrams*, 84 F.3d 602, 607 (2d Cir. N.Y. 1996) (some citations omitted). In the Ninth Circuit case, *Williamson*, the Court of Appeals wrote:

> In this case, the district court relied on an even weaker precedent, *Lerwill v. Inflight Motion Pictures*, 343 F. Supp. 1027 (N.D. Cal. 1972), in order to conclude that the appellants' fraud claims are preempted because the "FLSA is the exclusive remedy for claims that duplicate or are equivalent of rights protected by the FLSA." *Lerwill* is a dubious authority. It is a 1972 district court case that is not even about preemption. *Lerwill* never mentions the word "preemption," and it does not rely on a preemption framework. It was about the plaintiff's effort to get a more favorable remedy. The plaintiff sued for breach of contract of a collective bargaining agreement because of unpaid overtime. *See id*. at 1028. This theory directly implicated the FLSA's statutory provisions.

In this case, however, GD's allegedly fraudulent conduct was not covered by a FLSA provision. Nor are the appellants in this case avoiding the FLSA in order to seek a more favorable remedy. The FLSA's anti-retaliation provision actually offers broader remedies than state fraud claims because the anti-retaliation provision allows the recovery of attorneys' fees. The other remedies are the same. In 1977, Congress amended section 216(b) to allow plaintiffs who prove retaliation under section 215(a)(3) to obtain "legal and equitable relief" under state law. At least one other circuit has interpreted this relief to include compensatory, punitive, and emotional distress damages. *See, e.g., Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 284 (7th Cir. 1993); *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir. 1991). The only advantage of a state fraud claim over a FLSA claim is a longer statute of limitations (three years compared to two years). *Compare* Cal. Civ. Proc. Code § 338(d) *with* 29 U.S.C. § 255(a).

The district court's preemption analysis does not hold up under the categorical preemption framework. There is definitely no express or field preemption. And there is no conflict preemption because the anti-retaliation provision does not apply even under *Lambert's* broad definition. Under a categorical preemption analysis, the career fraud claims are not preempted.

*Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1153 (9th Cir. Cal. 2000) (footnote omitted).

Defendants' preemption argument is limited to overtime claims. (Def.'s Mem. of Law (Docket No. 256), at 19 ("Plaintiffs' common law claims should be dismissed pursuant to FRCP 12(b)(6) to the extent they seek allegedly unpaid overtime.").) Given the positions of the parties in this case, and the decisions discussed above, the Court is persuaded to apply the conclusion reached by the district court in *DeKeyser*, discussed above, that, "it is clear that the FLSA would preempt only state laws that mandated lower minimum wages or longer maximum workweeks."

***ERISA***

Defendants also move to dismiss Plaintiffs' ERISA claims for failure to state a cause of action, arguing that both Plaintiffs' ERISA claims are defective. Those claims are: (1) that Defendants breached their fiduciary duty; and (2) that Defendants committed recordkeeping violations by failing to credit Plaintiffs' 401(k) plans for all time worked. (2d Am. Compl. ¶¶ 307–10 (Second Cause of Action—Failure to Keep Accurate Records) and 311–12 (Third Cause of Action—Breach of Fiduciary Duty.) In opposing Defendants' application, Plaintiffs rely on *Stickle v. SCI W. Mkt. Support Ctr., L. P.*, No. CV 08-083-PHX-MHM, 2008 WL 4446539, *19, 2008 U.S. Dist. LEXIS 83315, *53 (D. Ariz. Sept. 30, 2008) ("Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants' participation, vesting and accrual of rights.") The Court is not persuaded by the reasoning in *Stickle*. In that decision, the district court determined that the plaintiff alleged that the corporate defendants had failed to properly account and credit the plaintiffs for hours worked. The decision did not address the basis of Defendants' motion here that they were not acting in a fiduciary capacity.

ERISA defines a fiduciary as follows:

(21) (A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 USCS § 1105(c)(1)(B)].

(B) If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the

Investment Company Act of 1940, such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this title, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

29 U.S.C. § 1002(21) (2008). Defendants rely in part on a Second Circuit case in which the Court of Appeals, reviewing a question of first impression (whether an allocation of pension plan assets and liabilities resulting from the spin-off of a division triggers fiduciary duties under ERISA), wrote that: "[f]iduciary duty and prohibited transaction rules apply only to decisions by an employer acting in its fiduciary capacity. See 29 U.S.C. §§ 1104 (a), 1106(a)(b)." *Flanigan v. GE*, 242 F.3d 78, 87 (2d Cir. 2001). In *Flanigan*, the Court held that the issue there concerned a corporate business decision, it was not acting as a fiduciary under ERISA. In this case, however, the issue is less clear. The decision to credit wages is made as an employer, but has implications for the retirement plan. Nevertheless, in *Lepage v. Blue Cross & Blue Shield Lepage v. Blue Cross & Blue Shield of Minnesota*, No. 08-584 (RHK/JSM), 2008 U.S. Dist. LEXIS 49298, 15–16 (D. Minn. June 25, 2008)*, the district court wrote:

"Setting compensation levels is a business decision or judgment made in connection with the on-going operation of a business." *See Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), *aff'd*, 315 F.3d 863 (8th Cir. 2002). Consequently, ERISA does not govern Blue Cross's business decision about how to classify an employee for payroll and FLSA purposes. Nor do Plaintiffs dispute this. (Pls.' Opp'n Mem. at 27-28.) Instead, they make the very fine distinction that Blue Cross, as plan administrator, has a fiduciary duty to double-check this business decision and evaluate whether employees had some legal claim to additional compensation. (*Id*. at 22, 27-30.) But no such duty exists: An employer's discretion in determining

salaries is a business judgment which does not involve the administration of an ERISA plan or the investment of an ERISA plan's assets. Such a decision may ultimately affect a plan indirectly but it does not implicate fiduciary concerns regarding plan administration or assets. Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits. *Eckelkamp*, 201 F. Supp. 2d at 1023....

*Lepage*, 2008 U.S. Dist. LEXIS 49298, 15-16. The same argument seems to be advanced

here in the second amended complaint:

> 289. Defendants failed to credit *or even investigate* crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the Plan. Defendants, while acting as fiduciaries exercising discretion over the administration of the Plan, breached their duties to act prudently and solely in the interests of Plan's participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under than Plan, or to investigate whether such hours should be credited. Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants' participation vesting and accrual of rights.

(2d Am. Compl. ¶ 289.) The Court determines that Plaintiffs' allegations fail to support a

plausible claim that Defendants were acting as fiduciaries when they allegedly failed to

report all hours of service. In determining the wage policy, Defendants were not acting as

plan fiduciaries, and the Court finds unpersuasive the allegation that Defendants had a

legal duty as ERISA fiduciaries to investigate crediting overtime pay.

Turning to the recordkeeping cause of action, Defendants argue that although

Plaintiffs seek relief pursuant to 29 U.S.C. § 1132(a)(3), a "catch all" equitable relief

provision, *Premick v. Dick's Sporting Goods, Inc.*, No. 02:06cv0530, 2007 U.S. Dist. LEXIS

3702, *15–16, 2007 WL 141913, *6 (W.D. Pa. Jan. 18, 2007), they are actuality ""asserting

a claim for benefits [they] claim[ ] to be owed because [their] 401(k) account was allegedly

shorted as a result of Dick's failure to pay...certain amounts of overtime.... In that vein,

a claim for benefits from a functioning plan can only be brought under 29 U.S.C. § 1132(a)(1)(B) and is not a claim for equitable relief, but rather one for damages." *Premick*, 2007 U.S. Dist. LEXIS 3702, *16. As such, Plaintiffs must plead exhaustion of administrative remedies provided under the plan, and the Court finds no facts plead in this regard. Accordingly, the Court finds that Plaintiffs have not plead a plausible ERISA recordkeeping claim.

### *RICO*

First, the Court notes that Plaintiffs have failed to comply with the local rule, which states in part as follows:

> (h) Any party asserting a claim, cross-claim or counterclaim under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., shall file and serve a "RICO Case Statement" under separate cover as described below. This statement shall be filed contemporaneously with those papers first asserting the party's RICO claim, cross-claim or counterclaim, unless, for exigent circumstances, the Court grants an extension of time for filing the RICO Case Statement. A party's failure to file a statement may result in dismissal of the party's RICO claim, cross-claim or counterclaim. The RICO Case Statement must include those facts upon which the party is relying and which were obtained as a result of the reasonable inquiry required by Federal Rule of Civil Procedure 11….

W.D.N.Y. Loc. R. Civ. P. 5.1(h) (2003). Plaintiffs acknowledge this failure, but contend that they were not flouting the local rule, and, therefore, dismissal of the RICO claim for their failure is not appropriate. (Pl.'s Mem. of Law (Docket No. 271), at 30, n. 8.) Plaintiffs cite to *Muscletech Research & Dev., Inc. v. E. Coast Ingredients, LLC*, No. 00-CV-0753A(F), 2004 U.S. Dist. LEXIS 29344, *49 n. 16, 2004 WL 941815, at *14, n. 16 (W.D.N.Y. Mar. 25, 2004). In *Muscletech*, however, the plaintiff *did* file a RICO statement, albeit late. *Id*. Flouting of the local rule was relevant in the case cited in *Muscletech*, *Gold v. Fields*, No. 92 CIV. 6680 (KMW), 1993 U.S. Dist. LEXIS 8094, Fed. Sec. L. Rep. (CCH) P97,666

(S.D.N.Y. Jun. 11, 1993), where the court was considering sanctions under Rule 11. In this matter, the failure to file a RICO statement in compliance with Local Rule 5.1(h) results in a lack of information to the Court and Defendants, with regard to the RICO allegations and the twenty factors the local rule requires a plaintiff to answer. Plaintiffs further request permission to file a late RICO statement, but provide no basis upon which the Court can determine whether the failure was due to excusable neglect in compliance with Federal Rule of Civil Procedure 6(b)(1)(B). Consequently, for this reason alone, the RICO claim can be dismissed.

Even if the Court were to consider the substance of the RICO claim, Defendants assert that, "[a]lleged civil violations of the FLSA do not amount to racketeering," *Vandermark v. City of New York*, 615 F. Supp. 2d 196, 209-210 (S.D.N.Y. 2009), and move for dismissal of the RICO claims in the second amended complaint. (Def.s' Mem. of Law (Docket No. 256), at 21.) The relevant statute provides as follows:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 U.S.C. § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(a), (b) & (c) (2005).  To state a civil claim under RICO, a plaintiff must first allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962. In so doing, a plaintiff must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more ["predicate"] acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).[2] Racketeering activity is defined in the statute as any act, including bribery and extortion, chargeable under State law and punishable by imprisonment for more than one year; any act indictable under numerous specific federal criminal provisions, including mail and wire fraud; and any offense involving bankruptcy, securities fraud or drug-related activities that is punishable under federal law. *See* 18 U.S.C. § 1961. Plaintiffs allege in the second amended complaint that by mailing out paychecks reflecting allegedly insufficient wages

---

[2]As pointed out by *Persaud v. Bode*, No. 04 CV 4475 (ARR), 2006 U.S. Dist. LEXIS 97452, *11 n.2 (E.D.N.Y. Feb. 6, 2006), the Second Circuit expanded on what it considered to be a pattern of racketeering activity in *United States v. Indelicato*, 865 F.2d 1370, 1375–76 (2d Cir. 1989), reflecting that the Supreme Court, in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98 (1985), "concluded that recovery in a civil RICO action did not require proof of either a prior conviction or a special type of injury." *Indelicato*, 865 F.2d at 1376.

and containing alleged misleading information about the amount of overtime worked,

Defendants committed the offense of mail fraud. The allegations are:

> 293. In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations. These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

> 294. The payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA. Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.

> 295. Defendants' predicate acts of mailing the misleading payroll checks in furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts. The relationship was reflected because the acts were connected to each other in furtherance of the Scheme. Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future. The threat was reflected by the continuing and ongoing nature of the acts.

(2d Am. Compl. ¶¶ 293–95.) In this regard, the Second Circuit has written on the

requirements for successfully pleading mail fraud:

> To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme…. While there is no requirement that the defendant personally mail a letter, the plaintiff must show "1) that the defendant 'caused' the mailing…and 2) that the mailing was for the purpose of executing the scheme or…'incidental to an essential part of the scheme.'" *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989) quoting *Pereira v. United States*, 347 U.S. 1, 8-9, 98 L. Ed. 435, 74 S. Ct. 358 (1954)).

> Allegations of mail fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)…. Pursuant to this higher pleading standard, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."

> *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme. *See Sun Sav. & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987) (mail fraud adequately pled where complaint described letters' date, content, origin, destination, and role in fraudulent scheme); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing complaint that failed to allege how misrepresentations furthered fraudulent scheme).…

*McLaughlin v. Anderson*, 962 F.2d 187, 190–91 (2d Cir. 1992). In their argument for dismissal of the RICO claims, Defendants state:

> Plaintiffs allege that "defendants repeatedly mailed payroll checks" and made "decisions that concerned…the manner and method in which employees received payroll information including their payroll checks," (2d Am. Compl. ¶¶ 36, 57, 80, 102, 124, 293), but do not provide facts suggesting that any of the individual defendants were aware of, or participated in, any allegedly fraudulent activity. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

(Def.s' Mem. of Law (Docket No. 256), at 22–23.) The Court agrees that the mail fraud allegations do not comply with Federal Rule of Civil Procedure 9. Accordingly, on this ground, the RICO claim can be dismissed.

Further, the Court finds that Plaintiffs' allegations in the second amended complaint fail to allege a plausible claim under any of the three RICO subsections: 18 U.S.C. § 1962(a), (b), or (c).[3] Plaintiffs have not alleged that Defendants "used or invested racketeering income to acquire or maintain an interest in the alleged enterprise, and that [they] suffered an injury as a result of that use or investment." *Mehrkar v. Schulmann*, No. 99 Civ. 10974(DC), 2001 WL 79901, *5 (S.D.N.Y. Jan. 30, 2001). As in *Mehrkar*, here Plaintiffs "merely allege[] that defendants received income from a pattern of racketeering

---

[3]Had Plaintiffs complied with Local Rule 5.1(h), the Court would be informed as to which subdivision(s) of § 1962 Plaintiffs relied on in their pleadings.

activity and 'used the proceeds...to acquire an interest in and establish the operation of enterprises engaged in interstate commerce.' (Am.Compl.¶ 56(a)). There is no allegation that this use distinctly injured plaintiff." *Id*. Plaintiffs allege only that, "Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing Plaintiffs and Class Members with misleading documents which defendants mailed and upon which Plaintiffs and Class Members relied to their detriment." (2d Am. Compl. ¶ 301.) "Under the plain language of this section, a violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering." *Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir. 1990). Thus, Plaintiffs have not plead a claim under § 1962(a).

With regard to 18 U.S.C. § 1962(b), the Second Circuit has adopted the D.C. Circuit's holding that, "in order to state a cause of action under subsection 1962(b), 'plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation.'" *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir. 1996) (quoting *Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1231 (D.C.Cir.1991). Plaintiffs here have alleged only harm as a result of the predicate acts, not the reinvestment of the money allegedly obtained from the illegal predicate acts. Thus, no claim has been plausibly plead under § 1962(b).

Finally, under § 1962(c), "the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity. We have determined that the person

and the enterprise referred to must be distinct." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). Accordingly, Plaintiffs' RICO claim is foreclosed under § 1962(c) since the Second Circuit has, "made clear that, by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Id*.

Finally, Plaintiffs have not alleged that the harm they suffered was as a consequence of the predicate acts listed in the RICO statute. Rather, the harm they assert is as a result of alleged violations of FLSA. Consequently, for all the reasons above, Plaintiffs' RICO claim must be dismissed.

## CONCLUSION

For the reasons stated above, the Court denies certification of the state common and statutory law claims as a class action, dismisses Plaintiffs' common law claims seeking allegedly unpaid overtime as preempted by FLSA by, and dismisses Plaintiffs' ERISA and RICO claims. The following causes of action may go forward in this lawsuit: First (FLSA); and Fifth (unpaid wages). As to the Fifth cause of action for unpaid wages under common or statutory law, only those claims involving New York law may go forward. Claims under the remaining jurisdictions outside New York are dismissed without prejudice to bringing actions in an appropriate jurisdiction.

Dated:  Rochester, New York
        August 4, 2010

                     ENTER.

                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge