UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAMARA BARRUS, et al.,
on behalf of themselves and all other
employees similarly situated,

                                                                                                **No. 05-CV-6253-CJS-JWF**

                                 Plaintiffs,

            v.

DICK'S SPORTING GOODS, INC.,
GALYAN'S TRADING COMPANY, INC., EDWARD
STACK, KATHRYN SUTTER, WILLIAM
COLOMBO, JAY CROSSON, AND LYNN URAM,

                                Defendants.

---

**ORDER PROVISIONALLY CERTIFYING CLASS ACTION,
CONDITIONALLY CERTIFYING FLSA COLLECTIVE ACTION,
APPROVING NOTICE, PRELIMINARILY APPROVING SETTLEMENT,
AND SETTING FAIRNESS HEARING**

Plaintiffs Tamara Barrus, Carolyn Caulkins, Jeffrey Little, Michael D'Agostino, Jennifer Gleason, Kevin Bujak, Elesha Williams, Thad Olson, Eric Schmidt, Sean Kirt, Jennifer Fulwider, Justin Price, Lee Liguore, Tim Bevins, Michael Chatterton, Nicole Jones, Daniel Lorenz, Adam Estrem, Thomas Mullaney, Jared Jones, Vanessa Seelaus, Degeorgio Cosby, Eric Strid, Kevin Ward, Joseph Day, Linda Brantley, Benjamin Rivenbark, Anthony Dunston II, Tomasa Rainey, Crystal Hunsicker, Raymond Lenahan, Heather Skutnik, Simone McAdams, George Tiesmeyer, Sean Mirek, Jacob Roberts, Jared Pentz, Greg Pavlick, John Behmke, Matthew Couch, Elizabeth Rhodes, Sean Rowe, James Morgan, Jerry Hackler, Randy Alleman, Kelley Clark, Alexander Cheng, Kelly Quirk, Jamie Alfonsi, Jason Mensinger, Daniel Kennedy, Robert Walker, Eric Johnston, Dannette Stackhouse, Nickole Gagne, Edward Wlazlowski, Stephen Harry, John Brown, Justin Jenkins, Frederick McDonald, Christian Broadway, Nikita

Thomas, Terri Jackson, Tyler Muilenberg, Jesse Liebman, Shawn Lamberty, Patrick McAlee, Kyle Kennedy, Rolanzo Doxie, Melvin Grannum, Anthony Boyer. Summer Guthrie, Matthew Bencal, Sandra Cornish, Luis Madrigal, Phillip Clark, Brian Jones, Bradley Mullis, Kathleen Birkenmeier, Gabriel Hodge, and Karie Bradley (collectively "Plaintiffs"), are current and former employees of Dick's Sporting Goods, Inc. ("DSG") and/or Galyan's Trading Company, LLC ("Galyan's").[1]  Plaintiffs contend that DSG and Galyan's (together, the "Corporate Defendants"), as well as current and former DSG executives William Colombo, Jay Crosson, Edward Stack, Kathryn Sutter, and Lynn Uram (collectively, the "Individual Defendants") failed to pay Plaintiffs, and other employees, for all time worked, including overtime compensation, in violation of the Fair Labor Standards Act ("FLSA") and certain state laws.  For their part, the Corporate Defendants and Individual Defendants (together, "Defendants") deny Plaintiffs' allegations.

Plaintiffs sought to pursue their FLSA claims as a collective action under 29 U.S.C. § 216(b), and they sought to pursue their state law claims as a class action under Fed. R. Civ. P. 23.  In prior rulings, this Court granted conditional certification to the FLSA claims, and, following notice, certain individuals have opted in to that claim.  The Court has also ruled that Plaintiffs may not pursue their state law claims in a single class.  However, up to now, this Court has not ruled on the propriety of Rule 23 certification of state law settlement subclasses, with each subclass limited to claims under the laws of a particular state.

Notwithstanding their adversarial positions in this matter, the Parties have entered the attached Settlement Agreement, which consists of the Settlement Agreement and Exhibits A through N thereto (collectively, the "Agreement"), that, if approved by this Court, would resolve

---

[1] Effective July 30, 2010, Galyan's Trading Company, Inc. was converted to Galyan's Trading Company, LLC.

all claims in this matter, including the claims of the FLSA Class and the Subclasses (each of which is defined herein) that Plaintiffs seek to represent.  Presently pending before this Court is the Parties' Motion For Order Preliminarily Approving Settlement, Conditionally Certifying FLSA Settlement Class, Provisionally Certifying State-Law Settlement Subclasses, Approving Notice, and Setting Fairness Hearing ("Motion").  Having reviewed the Parties' submissions, the Court now FINDS, CONCLUDES, AND ORDERS as follows:

## I.     DEFINITION OF THE SETTLEMENT SUBCLASSES AND FLSA CLASS

The Parties have entered into the Agreement solely for the purposes of compromising and settling their disputes in this matter.  As part of the Agreement, DSG has agreed not to oppose, for settlement purposes only, provisional certification of the following settlement classes:

> The "Alabama Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Alabama at any time during the Covered Period applicable to persons employed in that State.
>
> The "Arizona Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Arizona at any time during the Covered Period applicable to persons employed in that State.
>
> The "Colorado Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Colorado at any time during the Covered Period applicable to persons employed in that State.
>
> The "Connecticut Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Connecticut at any time during the Covered Period applicable to persons employed in that State.
>
> The "Delaware Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Delaware at any time during the Covered Period applicable to persons employed in that State.

The "Florida Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Florida at any time during the Covered Period applicable to persons employed in that State.

The "Georgia Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Georgia at any time during the Covered Period applicable to persons employed in that State.

The "Iowa Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Iowa at any time during the Covered Period applicable to persons employed in that State.

The "Illinois Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Illinois at any time during the Covered Period applicable to persons employed in that State.

The "Indiana Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Indiana at any time during the Covered Period applicable to persons employed in that State.

The "Kansas Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Kansas at any time during the Covered Period applicable to persons employed in that State.

The "Kentucky Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Kentucky at any time during the Covered Period applicable to persons employed in that State.

The "Maine Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Maine at any time during the Covered Period applicable to persons employed in that State.

The "Maryland Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Maryland at any

time during the Covered Period applicable to persons employed in that State.

The "Massachusetts Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Massachusetts at any time during the Covered Period applicable to persons employed in that State.

The "Michigan Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Michigan at any time during the Covered Period applicable to persons employed in that State.

The "Minnesota Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Minnesota at any time during the Covered Period applicable to persons employed in that State.

The "Missouri Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Missouri at any time during the Covered Period applicable to persons employed in that State.

The "Nebraska Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Nebraska at any time during the Covered Period applicable to persons employed in that State.

The "Nevada Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Nevada at any time during the Covered Period applicable to persons employed in that State.

The "New Hampshire Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in New Hampshire at any time during the Covered Period applicable to persons employed in that State.

The "New Jersey Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in New Jersey at

any time during the Covered Period applicable to persons employed in that State.

The "New York Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in New York at any time during the Covered Period applicable to persons employed in that State.

The "North Carolina Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in North Carolina at any time during the Covered Period applicable to persons employed in that State.

The "Ohio Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Ohio at any time during the Covered Period applicable to persons employed in that State.

The "Oregon Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Oregon at any time during the Covered Period applicable to persons employed in that State.

The "Pennsylvania Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Pennsylvania at any time during the Covered Period applicable to persons employed in that State.

The "Rhode Island Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Rhode Island at any time during the Covered Period applicable to persons employed in that State.

The "South Carolina Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in South Carolina at any time during the Covered Period applicable to persons employed in that State.

The "Tennessee Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Tennessee at any time during the Covered Period applicable to persons employed in that State.

The "Texas Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Texas at any

      time during the Covered Period applicable to persons employed in that State.

      The "Utah Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Utah at any time during the Covered Period applicable to persons employed in that State.

      The "Vermont Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in Vermont at any time during the Covered Period applicable to persons employed in that State.

      The "Virginia Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Virginia at any time during the Covered Period applicable to persons employed in that State.

      The "West Virginia Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG in West Virginia at any time during the Covered Period applicable to persons employed in that State.

      The "Wisconsin Subclass" shall mean: all current and former employees that worked and had positive earnings as non-exempt retail store Associates at DSG and/or Galyan's in Wisconsin at any time during the Covered Period applicable to persons employed in that State.

      All subclasses together are referred to as the "Subclasses." The Subclasses are opt-out classes under Fed. R. Civ. P. 23 raising the state law class claims identified in the Third Amended Complaint, and, collectively, the members of the Subclasses are "Subclass Members." Among others, all Plaintiffs and some (but not all) Opt-Ins (as that term is defined in the Settlement Agreement) are Subclass Members.

      As further part of the Agreement, Defendants have agreed not to oppose, for settlement purposes only, conditional certification pursuant 29 U.S.C. § 216(b) of the following opt-in settlement class raising the FLSA claims identified in the Third Amended Complaint:

<u>The FLSA Class</u>: The "FLSA Class" shall mean the Plaintiffs and Opt-Ins, and all other persons who are Subclass Members.

Collectively the FLSA Class Members and the Subclass Members are the "Class Members." For purposes of the various Subclasses, the term "Covered Period" shall mean the following:

> For current and former employees that worked as non-exempt retail store Associates at DSG in Illinois, Indiana, Kentucky, and Ohio, from September 15, 1996 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in Rhode Island, from November 24, 1996 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in New York, from July 5, 1999 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in Connecticut, Maine, Michigan, New Jersey, Tennessee, and Vermont, from June 27, 2000 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in Massachusetts, from July 17, 2000 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in Alabama, Nevada, Oregon, Utah, and Wisconsin, from November 24, 2000 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in Kansas, Missouri, Nebraska, West Virginia, and Florida, from June 27, 2001 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at DSG in Virginia, from November 24, 2001 to the date of the order granting Preliminary Approval.
>
> For current and former employees that worked as non-exempt retail store Associates at Galyan's in Alabama, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Michigan, Missouri, New

>Jersey, Ohio, Nebraska, Nevada, New York, Utah, Virginia, and Wisconsin from June 23, 2002 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG in Pennsylvania, from June 27, 2002 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG and Galyan's in Texas, from November 24, 2002 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG and Galyan's in Maryland, from June 13, 2003 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG and Galyan's in Colorado, Minnesota, and North Carolina, from June 27, 2003 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG in Delaware and South Carolina, from June 27, 2003 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG in Arizona and New Hampshire, from November 24, 2003 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG and Galyan's in Georgia, from November 24, 2004 to the date of the order granting Preliminary Approval.
>
>For current and former employees that worked as non-exempt retail store Associates at DSG in Iowa, from November 24, 2004 to the date of the order granting Preliminary Approval.

For purposes of the FLSA Class, the term "Covered Period" shall mean:

>For current and former employees that worked as non-exempt retail store Associates at DSG and Galyan's, from July 5, 2002 to the date of the order granting Preliminary Approval.

Plaintiffs assert state law claims for overtime pay and unpaid wages on behalf of the FLSA Class and each Subclass.

## II. DESIGNATION OF THE FLSA CLASS AS AN FLSA COLLECTIVE ACTION

The Court finds that the members of the FLSA Class are similarly situated within the meaning of Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), for purposes of determining whether the terms of settlement are fair. Accordingly, the Court conditionally certifies the FLSA Class as an FLSA collective action.

## III. RULE 23 CERTIFICATION OF THE SUBCLASSES

In examining potential provisional certification of the Subclasses, the Court has considered: (1) the allegations, information, arguments, and authorities cited in the Motion and supporting papers; (2) the allegations, information, arguments, and authorities provided by the Parties in connection with the pleadings and other motions filed by each of them in this case; (3) Defendants' conditional agreement, for settlement purposes only, not to oppose provisional certification of the Subclasses; (4) the terms of the Agreement; and (5) the elimination of the need, on account of the settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification.

In connection with its provisional certification of the Subclasses, the Court makes the following findings:

(a) The Subclasses are sufficiently numerous that joinder of all class members is impracticable;

(b) There are questions of law or fact common to the members of each Subclass, including whether the class members were paid for all time worked;

(c) The Subclass representatives' claims are typical of the claims of the members of the respective Subclasses in that each Class representative raises the same claims as the class members of the particular Subclass that he or she seeks to represent;

(d) The Subclass representatives can fairly and adequately represent their respective Subclass' interests, in that (1) Subclass representatives have retained counsel who are qualified and experienced in the issues raised in this litigation, and (2) none of the Subclass representatives has any apparent interest antagonistic to the interests of the classes that they seek to represent.

The Court further concludes that the requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied because questions of law and fact common to the members of the Subclasses predominate over any questions affecting only individual members and because a settlement class is superior to other available methods for the fair and efficient adjudication of this matter.

Therefore, solely for the purpose of determining whether the terms of settlement are fair, reasonable, and adequate, the Court provisionally certifies, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Subclasses as defined above. The Court authorizes that notice be mailed to potential members of the Subclasses.

### IV. APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

Plaintiffs are hereby appointed as class representatives of the FLSA Class. The following persons are hereby appointed as class representatives of the respective Subclasses:

Alabama Subclass: Nikita Thomas, Terri Jackson, Rolanzo Doxie

Arizona Subclass: Shawn Lamberty

Colorado Subclass: Thomas Mullaney, Jared Jones, Vanessa Seelaus

Connecticut Subclass: Eric Strid, Kevin Ward

Delaware Subclass: Jamie Alfonsi, Kelly Quirk

Florida Subclass: Kyle Kennedy, Patrick McAlee

Georgia Subclass: Daniel Kennedy, Melvin Grannum

Illinois Subclass: Jennifer Gleason, Kevin Bujak, Elesha Williams, Thad Olson, Eric Schmidt

Indiana Subclass: Michael Chatterton, Nicole Jones

Iowa Subclass:  Tyler Muilenberg, Gabriel Hodge

Kansas Subclass:  Anthony Boyer, Robert Walker

Kentucky Subclass:  Degeorgio Cosby, Summer Guthrie

Maine Subclass:  Nickole Gagne

Maryland Subclass:  Anthony Dunston II, Tomasa Rainey, Crystal Hunsicker

Massachusetts Subclass:  Raymond Lenahan, Heather Skutnik, Matthew Bencal

Michigan Subclass:  Sean Kirt

Minnesota Subclass:  Daniel Lorenz, Adam Estrem

Missouri Subclass:  Jason Mensinger, Kathleen Birkenmeier

Nebraska Subclass:  Dannette Stackhouse, Karie Bradley

Nevada Subclass:  Frederick McDonald, Christian Broadway

New Hampshire Subclass:  Eric Johnston

New Jersey Subclass:  Simone McAdams, George Tiesmeyer, Sean Mirek

New York Subclass:  Tamara Barrus, Carolyn Caulkins, Michael D'Agostino, Jeffrey Little

North Carolina Subclass:  Joseph Day, Linda Brantley, Benjamin Rivenbark, Bradley Mullis

Ohio Subclass: Jennifer Fulwider, Justin Price, Lee Liguore, Tim Bevins, Brian Jones

Oregon Subclass:  Jesse Liebman

Pennsylvania Subclass:  Jacob Roberts, Jared Pentz, Greg Pavlick, John Behmke, Matthew Couch, Elizabeth Rhodes

Rhode Island Subclass:  Sean Rowe

South Carolina Subclass:  James Morgan, Stephen Harry

Tennessee Subclass:  Jerry Hackler

Texas Subclass:  Alexander Cheng, Sandra Cornish

Utah Subclass:  Randy Alleman

Vermont Subclass: John Brown

Virginia Subclass: Edward Wlazlowski, Phillip Clark

West Virginia Subclass: Justin Jenkins

Wisconsin Subclass: Kelley Clark, Luis Madrigal

Patrick J. Solomon, J. Nelson Thomas, and Peter J. Glennon of Thomas & Solomon LLP are hereby appointed as Class Counsel of the FLSA Class and the Subclasses.

## V. DISPOSITION IF SETTLEMENT DOES NOT BECOME EFFECTIVE

If, for any reason, the Agreement does not become effective, Defendants' agreement not to oppose certification of settlement classes in this case shall be null and void in its entirety; this Order provisionally certifying the Subclasses and conditionally certifying the FLSA Class shall be vacated; the Parties shall return to their respective positions in this lawsuit as those positions existed immediately before the Parties executed the Agreement and before the filing of the Third Amended Complaint; and nothing stated in the Agreement, the Motion, this Order, or in any attachments to the foregoing documents shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action. In particular, the FLSA Class, conditionally certified for purposes of settlement, and the Subclasses, provisionally certified for purposes of settlement, shall be decertified, and the Corporate Defendants and Individual Defendants will retain the right to contest whether this case, as it existed before the Third Amended Complaint, should be maintained as a class action and/or a collective action and to contest the merits of all claims in the case.

## VI. PRELIMINARY APPROVAL OF THE AGREEMENT

The Court has reviewed the terms of the Agreement, and the description of the Parties' settlement in the Parties' Motion and supporting papers. Based on that review, the Court

concludes that the Agreement has no obvious defects, and the Parties' settlement is within the range of possible settlement approval.  The Corporate Defendants have committed to pay up to and including $15,000,000 to settle this matter, a commitment that provides adequate consideration for the releases of claims in this case.  As to the proposed plan of allocation contained in the Agreement, the Court finds that the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted.  Specifically, Plaintiffs strongly contend that off-the-clock work was prevalent and widespread among the hourly employees of DSG and Galyan's, whereas Defendants strongly contend that off-the-clock work was non-existent or, at most, isolated and sporadic.  As such, the Parties have agreed to a claims-made process, under which only persons who attest that they in fact worked without compensation during the relevant time frame will receive a settlement payment.  Thus, while Defendants have exposed themselves to payments of as much as $15,000,000, they will not be obligated to make payments to class members who do not claim, under oath, that they suffered from the wrongs alleged in this case.  This is a fair and reasonable provision, and the parties' proposed plan of distribution is well within the range of possible approval.  Accordingly, the Court hereby grants preliminary approval of the Agreement.

## VII.   APPROVAL OF THE FORM AND MANNER OF NOTICE

The Parties have submitted for this Court's approval a proposed Notice to Subclass Members who are not Opt-Ins or Plaintiffs (the "Subclass Member Notice") (Exhibit D to the Agreement), a proposed Notice to Opt-Ins (the "Opt-In Notice") (Exhibit H to the Agreement), an Opt-Out Statement to Subclass Members are not Opt-Ins or Plaintiffs (Exhibit E to the Agreement), an Opt-Out Statement to Opt-Ins (Exhibit I to the Agreement), and a Claim Form and Individual Release (Exhibit F to the Agreement).  The Parties propose distributing to Subclass Members who are not Opt-Ins or Plaintiffs (1) the Subclass Member Notice, (2) the

14

Opt-Out Statement to Subclass Members who are not Opt-Ins or Plaintiffs, and (3) the Claim Form and Individual Release.  The Parties propose distributing to Opt-Ins (1) the Opt-In Notice and (2) the Opt-Out Statement to Opt-Ins.  The Court now considers each of these documents.

The proposed Subclass Member Notice and Opt-In Notice appear to be the best notice practical under the circumstances and appear to allow the Subclass Members and Opt-Ins a full and fair opportunity to consider the Parties' proposed settlement and develop a response.  The proposed plan for distributing both the Subclass Member Notice (along with the Opt-Out Statement to Subclass Members who are not Opt-Ins or Plaintiffs, and the Claim Form and Individual Release, which will accompany the Subclass Member Notice), as well as the Opt-In Notice (along with the Opt-Out Statement to Opt-Ins) likewise appears to be a reasonable method calculated to reach all members of the Subclasses who would be bound by the settlement.

The Subclass Member Notice, the Opt-In Notice, the Opt-Out Statement to Subclass Members who are not Opt-Ins or Plaintiffs, and the Opt-Out Statement to Opt-Ins fairly, plainly, accurately, and reasonably inform members of the FLSA Class and the Subclasses of:  (1) appropriate information about the nature of this litigation, the class, the identity of Class Counsel, and the essential terms of the Agreement and settlement; (2) appropriate information about Class Counsel's forthcoming application for attorneys' fees, the proposed service payments, and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the settlement; (4) appropriate information about this Court's procedures for final approval of the Agreement and settlement; (5) appropriate information about how to object to or opt-out of the settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding the litigation, the

Agreement, and the settlement.  Similarly, the proposed Claim Form and Individual Release appears to allow members of the Subclasses who are not Opt-Ins a full and fair opportunity to submit a claim for proceeds in connection with the settlement.  Moreover, the Claim Form and Individual Release fairly, accurately, and reasonably informs Subclass Members who are not Opt-Ins or Plaintiffs that failure to complete and submit a Claim Form, in the manner and time specified, shall constitute a waiver of any right to obtain any share of the Settlement Payment.

The Court, having reviewed the proposed Subclass Member Notice, Opt-In Notice, Opt-Out Statement to Subclass Members who are not Opt-Ins or Plaintiffs, the Opt-Out Statement to Opt-Ins, and Claim Form and Individual Release (collectively "Notice Materials"), finds and concludes that the proposed plan for distributing the same will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements.  Accordingly, the Court hereby Orders as follows:

(a) The form and manner of distributing the proposed Notice Materials are hereby approved.

(b) Promptly following the entry of this Order, the Claims Administrator selected by the Parties shall prepare final versions of the Notice Materials, incorporating into the Notice Materials the relevant dates and deadlines set forth in this Order.

(c) Within 15 calendar days after Defendants' delivery of the information referenced in Section 2.4(A) of the Agreement (the "Initial Mailing Deadline"), the Claims Administrator shall mail, using information to be provided by Defendants no later than 15 business days after the entry of this Order:

(1) <u>Subclass Member Documents</u>:  For Subclass Members who are not Opt-Ins or Plaintiffs, the final version of the (1) Subclass Member Notice, (2) Opt-Out Statement to Subclass Members who are not Opt-Ins or Plaintiffs, and (3) a Claim Form and Individual Release; and

(2) <u>Opt-In Documents</u>:  For Opt-Ins, the final version of the (1) Opt-In Notice, and (2) an Opt-Out Statement to Opt-Ins.

(d) The Claims Administrator shall take all reasonable steps to obtain the correct address of any Subclass Members and/or Opt-Ins for whom Notice Materials are returned by the post office as undeliverable.

  (e)  Where correct addresses are obtained for any Subclass Members and/or Opt-Ins for whom Notice Materials are returned by the post office as undeliverable, the Claims Administrator shall attempt to remail the Notice Materials, except that the Claims Administrator shall attempt no such remailings more than 40 calendar days after the Initial Mailing Deadline.

  (f)  The Claims Administrator shall take all other actions in furtherance of claims administration as are specified in the Agreement.

**VIII. PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT**

  **A. Deadline To Request Exclusion From the Settlement**

To be effective, a Subclass Member's and/or a Opt-In's Opt-Out Statement must be signed and sent to the Claims Administrator, at the address provided in the Class Notice, <u>via</u> First Class United States Mail, postage prepaid, with a postmark no later than 45 calendar days after the Initial Mailing Deadline (the end of the "Opt-Out Period"). The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel, as specified in the Agreement, not later than three business days after the receipt thereof. The Claims Administrator also shall, within ten calendar days after the end of the Opt-Out Period, send a final list of Opt-Out Statements to Class Counsel and Defendants' counsel by both e-mail and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under the terms of the Agreement.

  **B. Deadline For Filing Objections To Settlement**

Any Subclass Member or Opt-In who wishes to object to the fairness, reasonableness or adequacy of the Agreement or the settlement must do so in writing. To be considered, any such objection must be sent to the Claims Administrator, at the address provided in the Class Notice,

<u>via</u> First-Class United States mail, postage prepaid. In addition, any such objection must be postmarked no later than 45 calendar days after the Initial Mailing Deadline, and it must be received by the Claims Administrator no later than seven calendar days after the end of the Opt-Out Period. An objector who wishes to appear at the Fairness Hearing, either in person or through counsel hired by the objector, must state his or her intention to do so at the time the objector submits his/her written objections. Subclass Members and/or Opt-Ins who opt out of the case shall not be eligible to submit objections.

The Claims Administrator shall stamp the postmark date and the date received on the original and send copies of each objection to the Parties by e-mail and overnight delivery not later than two business days after receipt thereof. The Claims Administrator shall also date-stamp originals of any objections. On or before 14 calendar days before the Fairness Hearing, the Parties may file with the Court written responses to any filed objections.

### C. Qualification for Payment & Deadline For Submitting Claim Forms

Plaintiffs qualify for payment by virtue of their status as Plaintiffs. Opt-Ins qualify for payment if they do not opt out. Subclass Members who are not Opt-Ins or Plaintiffs qualify for payment if they (1) do not opt out, and (2) timely and fully complete a Claim Form and Individual Release in accordance with the terms of the Agreement. Completion of the Claim Form and Individual Release includes: (1) an oath that, at some point during the applicable Covered Period, he or she worked without compensation; (2) an acknowledgment that, by signing the Claim Form and Individual Release, he or she is a Class Member; (3) an acknowledgment that, by signing the Claim Form and Individual Release, he or she opts in to the case pursuant to 29 U.S.C. § 216(b); and (4) a release of claims consistent with that set forth in the Subclass Member Notice. To be effective, the Claim Form and Individual Release must be sent to the Claims Administrator at the address provided in the Class Notice by First Class

United States Mail, postage prepaid, and must be postmarked no later than 45 calendar days after the Initial Mailing Deadline.

### D. Fairness Hearing

No later than 30 calendar days after the end of the Opt-Out period, the Parties shall jointly file a motion requesting that the Court grant: (1) final Fed. R. Civ. P. 23 certification of the Subclasses, (2) final 29 U.S.C. § 216(b) certification to the FLSA Class, (3) final approval of the Agreement, (4) entry of judgment, and (5) dismissal of the case with prejudice.

The hearing (the "Fairness Hearing") to determine whether to grant this motion will be held approximately 115 days after the Court's entry of this Order. Specifically, this Court will hold the Fairness Hearing on **June 1, 2011 at 3:00 p.m**.

### E. Deadline for Class Counsel to File a Petition For an Award of Attorneys' Fees and Reimbursement of Expenses

Class Counsel shall file with this Court their petition for an award of attorneys' fees and reimbursement of expenses no later than 30 calendar days after the end of the Opt-Out Period. The Court will consider any such petition at the Fairness Hearing.

### F. Deadline For Plaintiffs and Opt-Ins To File A Petition For Approval of Service Payments To Plaintiffs

Plaintiffs and Opt-Ins shall file with the Court any petition for an award of service payments no later than 30 calendar after the end of the Opt-Out Period. The Court will consider any such petition at the Fairness Hearing.

### G. Release of Claims

If, at the Fairness Hearing, this Court grants Final Approval of the Agreement, each Plaintiff and each Opt-In and Subclass Member who does not timely opt out will release the claims identified in the Agreement. This Court has reviewed the release language in the

Agreement and the language contained in the Claim Form and Individual Release, and finds such language to be fair, reasonable, and enforceable.

DATED:  February 3, 2011                                     /s/ Charles J. Siragusa
                                                                                 Hon. Charles J. Siragusa
                                                                                 United States District Judge