UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAMARA BARRUS, et al.,
*on behalf of himself and all other*
*employees similarly situated,*

                        *Plaintiffs*,

    v.

DICK'S SPORTING GOODS, INC., et al.,

                        *Defendant*.

Civil Action No.
05-CV-6253 (CJS/JWF)


MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SERVICE PAYMENTS TO NAMED PLAINTIFFS AND
OPT-IN CLASS MEMBERS


                                              THOMAS & SOLOMON LLP
                                               *Attorneys for Plaintiffs*
                                               693 East Avenue
                                               Rochester, NY 14607
                                               Telephone: (585) 272-0540

Of Counsel:   Patrick J. Solomon
                    J. Nelson Thomas
                    Peter J. Glennon
                    Sarah M. Born

## PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum of Law and the accompanying affirmation of Patrick J. Solomon sworn to May 26, 2011 ("Solomon Aff.") in support of Plaintiffs' Motion for Service Payments to Named Plaintiffs and Opt-in Class Members.

The parties in this matter have reached a settlement that was preliminarily approved by this Court on February 3, 2011 (Docket No. 388). In connection with the parties' motion for final approval of the settlement, plaintiffs seek incentive awards in the form of Service Payments for named plaintiffs and opt-in class members as follows: (1) for original named plaintiffs Tamara Barrus, Carolyn Caulkins, Jeffrey Little and Michael D'Agostino (together "Original Named Plaintiffs"), $20,000 each; (2) for any plaintiffs who served as named plaintiffs in the State Actions ("State Action Named Plaintiffs"), $1,000 each; (3) for any plaintiffs or Opt-Ins, provided they do not opt out, who were deposed in this action, $5,000 each ("Deponents"); (4) for any plaintiffs or opt-ins, provided they do not opt out, who submitted an affidavit in connection with this action, $2,500 each ("Affiants"); and (5) for each opt-in, provided he or she does not opt out, $100 each ("Opt-Ins") (collectively "Identified Groups").[1] See Settlement Agreement, § 3.3 (Dkt. No. 384-2). A list of the specific names of the individuals whom Service Payments are sought is set forth in Exhibits K-N of the Settlement Agreement. Dkt. No. 384-2.

---

[1] The amounts awarded are cumulative to the extent any Plaintiff or Opt-In qualifies for more than one Service Payment. For example, each of the Original Named Plaintiffs also qualifies as a Deponent, Affiant and Opt-In. Thus, their total Service Payment award would be $27,600 (in addition to any amount they are entitled to pursuant to § 3.4 of the Settlement Agreement). See Solomon Aff. ¶ 4.

-1-

The requested Service Payments, as listed above, are warranted because of the extra effort these plaintiffs put into assisting Class Counsel with litigating, and resolving this case with the favorable settlement secured.

## FACTUAL BACKGROUND

Despite the many challenges and risks associated with being actively involved in litigation against the largest sporting goods companies in the country, the Identified Groups came forward and put tremendous effort into assisting Class Counsel with the investigation and litigation of this action, along with the 22 state actions filed across the country. *See* Solomon Aff. ¶ 4. As a result of their assistance, Class Counsel was able to secure a favorable settlement for the entire class. *See* Solomon Aff. ¶ 6.

*Original Named Plaintiffs*

Tamara Barrus, Carolyn Caulkins, Jeffrey Little and Michael D'Agostino, have been actively involved in this litigation since before it was commenced. *See* Solomon Aff. ¶ 8. The information and documents provided by the Original Named Plaintiffs to Class Counsel were the basis for the filing of the class action that now potentially benefits over 180,000 affected employees. *See* Solomon Aff. ¶ 9. The Original Named Plaintiffs met with Class Counsel on numerous occasions to discuss their experiences, explain defendants' practices related to recording time, and answer Class Counsel's questions. *See* Solomon Aff. ¶ 10. After the initial Complaint was filed, the Original Named Plaintiffs continued meeting and discussing issues with Class Counsel, including providing invaluable information about claims and defenses defendants asserted in the course of the litigation. *See* Solomon Aff. ¶ 11. The Original Named Plaintiffs were a substantial and necessary source of information, regarding defendants' claims, upon which Class Counsel relied heavily. *See* Solomon Aff. ¶ 11.

In preparation of plaintiffs' motion for conditional class certification, the Original Named Plaintiffs provided affirmations to support that motion. *See* Dkt. Nos. 16-22. Plaintiffs' evidence for that motion would not have been as strong without their affirmations. *See* Solomon Aff. ¶ 12. The result was monumental—conditional certification was granted to *all* hourly employees *nationwide*. *See* Solomon Aff. ¶ 13; Dkt. Nos. 59 (Order by Magistrate Judge Feldman granting class certification), 64 (Order by District Judge Siragusa affirming Magistrate Judge Feldman's Order granting class certification). Thus, with the help of their affirmations, notice of the collective action was mailed to over 140,000 potential class members. *See* Solomon Aff. ¶ 14. Ultimately, 3,588 individuals chose to opt-in to the collective action. *See See* Solomon Aff. ¶ 35.

The Original Named Plaintiffs involvement did not stop there. They were involved with the analysis of data and the formulation of case strategy and settlement demands, as well as preparation for the mediation sessions. *See* Solomon Aff. ¶ 15. When needed, the Original Named Plaintiffs were called upon to review documents, assess their relevance to the case, and to discuss their findings with Class Counsel. *See* Solomon Aff. ¶ 16. The Original Named Plaintiffs therefore met with Class Counsel on multiple occasions both in person and by telephone. *See* Solomon Aff. ¶ 17. Often the meetings with Class Counsel were on short notice and the Original Named Plaintiffs had to make special arrangements to attend the meetings, often interrupting their work and other planned activities. *See* Solomon Aff. ¶ 18.

The Original Named Plaintiffs also committed a significant amount of time and effort in responding to discovery requests directed to plaintiffs, including interrogatories and requests for production of documents. *See* Solomon Aff. ¶ 19. The Original Named Plaintiffs also sat for full day depositions. *See* Solomon Aff. ¶ 20. In preparation for their depositions,

the Original Named Plaintiffs spent hours reviewing litigation documents, documentary evidence and the claims at issue in the lawsuit. It was through this participation in discovery, in part, that plaintiffs were able to secure the favorable settlement ultimately obtained. *See* Solomon Aff. ¶ 21.

*State Action Named Plaintiffs*

Additionally, the State Action Named Plaintiffs also expended significant time and effort assisting Class Counsel in the investigation and filing of the numerous state actions. *See* Solomon Aff. ¶ 22. For example, the State Action Named Plaintiffs completed interviews with Class Counsel, discussing their employment experiences, defendants' practices at their locations, and confirming the existence of class wide allegations. *See* Solomon Aff. ¶ 23. Often Class Counsel had to follow up with the State Action Named Plaintiffs to review arguments raised by defendants, or to get a better understanding of evidence produced by defendants. *See* Solomon Aff. ¶ 24.

Moreover, many of the State Action Named Plaintiffs were current employees at the time they stepped forward to represent the class members in their state. *See* Solomon Aff. ¶ 25. Despite the very real fear of potential retaliation as a result of being a named plaintiff, the State Action Named Plaintiffs took a lead role and assisted Class Counsel in the litigation of the state actions. Thus, the service payment requested is reasonable. *See* Solomon Aff. ¶ 26. Additionally, in several instances the commencement of the numerous state actions resulted in extensive coverage by local media outlets, which would seek comment from the Named Plaintiffs. *See* Solomon Aff. ¶ 27.

*Deponents*

Plaintiffs additionally request Service Payments in the amount of $5,000 for each named plaintiff and opt-in who was deposed in this action. Each Deponent was also required to participate in written discovery and document production. *See* Solomon Aff. ¶ 28. Thus, the Deponents had to invest significant time and energy discussing their claims with Class Counsel, reviewing the discovery requests and their responses, and searching for documents. *See* Solomon Aff. ¶ 29. In preparation for the depositions, each Deponent met with Class Counsel for several hours to review litigation documents, documentary evidence and the claims at issue in the lawsuit. *See* Solomon Aff. ¶ 30. The Deponents then had to appear for their deposition, many of which were full day depositions. *See* Solomon Aff. ¶ 31. With the help of the participation and testimony provided by Deponents, plaintiffs were able to secure a favorable settlement fund for the class. *See* Solomon Aff. ¶ 32.

*Affiants*

Plaintiffs also request Service Payments in the amount of $2,500 each for those who provided Class Counsel with affirmations. The Affiants had to spend time discussing their claims, providing insight, and sharing their knowledge with Class Counsel in the process of completing an affirmation. *See* Solomon Aff. ¶ 33. The Affiants' willingness to execute an affirmation (despite some Affiants being current employees at the time) potentially helped plaintiffs in their settlement negotiations with defendants. *See* Solomon Aff. ¶ 34.

*Opt-Ins*

Lastly, plaintiffs request Service Payments in the amount of $100 each to the class members who affirmatively opted-in to the FLSA class. Many of the Opt-Ins were current employees when they joined the FLSA class, but took the affirmative step of opting-in despite

the fear of potential retaliation. *See* Solomon Aff. ¶ 36. Moreover, all of the Opt-Ins have been involved in this litigation for over two years, and the involvement of over 3,500 opt-ins has had an impact on the outcome of this action. *See* Solomon Aff. ¶ 37.

## ARGUMENT

I.  **SERVICE PAYMENTS TO THE IDENTIFIED GROUPS ARE JUSTIFIED**

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (Payson, M.J.); *see also Willix v. Healthfirst, Inc.,* No. 07-cv-1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."); *Khait v. Whirlpool Corp.,* No. 06-cv-6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (same); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) ("In this Circuit, the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery … receive an additional award, termed an incentive award."). In fact, "such awards are particularly appropriate in the employment context." *Frank,* 228 F.R.D. at 187 (citing *Roberts,* 979 F. Supp. at 201.).

Courts usually look at the following four factors when considering whether a requested Service Payment is reasonable: (1) the existence of special circumstances including the personal risk by plaintiffs in becoming and continuing as litigants; (2) the time and effort expended by plaintiffs in assisting in the litigation or in bringing added value; (3) any other

burdens sustained by plaintiffs in assisting with the prosecution of the claim; and (4) the ultimate recovery. *Frank,* 228 F.R.D. at 187 (internal citations omitted).

### A. The Identified Groups Assumed Great Risk by their Respective Participation

As this Court has recognized, "the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded," even when there is no evidence of retaliation. *Frank,* 228 F.R.D. at 187. Thus, granting Service Payments to those plaintiffs willing to step forward and actively participate in the litigation is reasonable.

Here, the Original Named Plaintiffs, State Action Named Plaintiffs, Deponents, Affiants, and Opt-Ins, all assumed varying amounts of risk by stepping forward, as reflected in the tiered amounts of the Service Payments requested for each Identified Group. For example, the Original Named Plaintiffs initiated the investigation and the filing of this class action. Due to the risk the Original Named Plaintiffs took in filing a lawsuit against a current or former employer, over 180,000 employees had the opportunity to participate in the settlement. Thus, because the Original Named Plaintiffs took the initiative and were willing to put their name on this class action, thus assuming a great amount of risk, the amount requested for them is the highest of the requested amounts. However, the other Identified Groups also assumed risk by their participation and willingness to assist Class Counsel with the litigation, which is reflected in the amount requested for each Identified Group. Their participation should not go unrewarded.

Moreover, many of the individuals in the Identified Groups continued to work in retail store positions after leaving defendants' employ. Their active involvement in this class action could have had a negative effect on their ability to obtain employment if their

potential employer learned that they sued a former employer. Despite this risk of potential "black-listing," the individuals in the Identified Groups took an active part in this litigation.

### B. The Time and Effort Expended by the Identified Groups Warrants the Amount Requested

All of the Identified Groups designated by plaintiffs are deserving of the requested Service Payments because, as discussed in detail above, they have expended extra time and effort in support of this litigation, particularly when compared to silent class members. The requested Service Payments for each Identified Group reflects the varying levels of time and effort invested in the litigation. For example, because the Original Named Plaintiffs have expended a significant amount of time and effort, this litigation and its resolution over the last six years, their requested Service Payment is the highest of the amounts being requested.

The State Action Named Plaintiffs, Deponents, Affiants, and Opt-ins also invested time and effort in these actions without such effort Class Counsel would not have been able to have as effectively litigated this matter and negotiated the favorable settlement amount. Thus, the Identified Groups are entitled to the requested Service Payments.

### C. The Identified Groups Experienced Burdens in Assisting Class Counsel

Additionally, the Identified Groups experienced various burdens due to assisting Class Counsel throughout the course of this litigation. For example, the Deponents had to meet with Class Counsel, review documents and the claims at issue in this litigation in order to prepare for their depositions. Additionally, the Deponents had to sit through hours of questioning by attorneys, which often caused stress because of their unfamiliarity with the legal system. Many of the Deponents had to miss work, rearrange their schedules, and travel up to an hour one way in order to attend depositions. Plaintiffs benefitted from the

testimony of 59 class members, and were able to rely on the testimony in settlement negotiations with defendants.

The other Identified Groups also experienced significant burdens while assisting Class Counsel in litigating, and negotiating the settlement, in this action, including meeting and conferring with Class Counsel, reviewing documents, and providing information about defendants' practices.  The Identified Groups are deserving of the requested Service Payments because the information provided to Class Counsel by the Identified Groups strengthened plaintiffs' claims, and would not have been possible if the Identified Groups had not been willing to sustain such burdens.

### D. The Ultimate Recovery to the Class is Significant

Lastly, the ultimate recovery to the class is significant—Class Counsel has secured a settlement of $15 million.  Thus, the Service Payments requested are reasonable.  *See Willix,* 2011 WL 754862, at *7 (awarding service payments ranging from $7,500 - $30,000 to named plaintiffs and certain class members from $7.675 million settlement fund); *Khait,* 2010 WL 2025106, at *9 (awarding service payments ranging from $10,000 - $15,000 to 15 class representatives from $9.25 million settlement fund).  Moreover, the aggregate sum of the requested Service Payments only represents approximately 6% of the total settlement fund.  *See Frank,* 228 F.R.D. at 187 (awarding service payment of 8.4% of the total settlement fund).  Thus, the requested Service Payments are reasonable in light of the favorable recovery secured by Class Counsel.

### CONCLUSION

For the foregoing reasons, plaintiffs respectfully request Service Payments be granted as follows: (1) for original named plaintiffs Tamara Barrus, Carolyn Caulkins, Jeffrey Little

and Michael D'Agostino, $20,000 each; (2) for any plaintiffs who served as named plaintiffs in the State Actions $1,000 each; (3) for any plaintiffs or Opt-Ins, provided they do not opt out, who were deposed in this action, $5,000 each; (4) for any plaintiffs or opt-ins, provided they do not opt out, who submitted an affirmation in connection with this action, $2,500 each; and (5) for each opt-in, provided he or she does not opt out, $100 each.

Dated:  May 26, 2011

                              **THOMAS & SOLOMON LLP**

By:   /s/ Patrick J. Solomon
       J. Nelson Thomas, Esq.
       Patrick J. Solomon, Esq.
       Peter J. Glennon, Esq.
       Sarah M. Born, Esq.
       *Attorneys for Plaintiffs*
       693 East Avenue
       Rochester, New York 14607
       Telephone:  (585) 272-0540
       nthomas@theemploymentattorneys.com
       psolomon@theemploymentattorneys.com
       pglennon@theemploymentattorneys.com
       sborn@theemploymentattorneys.com